AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| In the Matter of the Search of | |
| --- | --- |
| a black Apple iPhone cellular telephone with a clear case; a black Samsung cellular telephone with a black case; and a black Samsung cellular telephone with no case | Case No. 23-8394MB |

### SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _9/26/23_ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for __ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _9-12-23  2:53pm_ _____
                                                                          *Judge's signature*

City and state: Phoenix, Arizona _____     Honorable John Z. Boyle, U.S. Magistrate Judge_____
                                                                          *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Apple iPhone cellular telephone with a clear case (SUBJECT TELEPHONE 1); a black Samsung cellular telephone with a black case (SUBJECT TELEPHONE 2); and a black Samsung cellular telephone with no case (SUBJECT TELEPHONE 3) hereafter the "SUBJECT TELEPHONES." The SUBJECT TELEPHONES are currently located at the DEA Office.

This warrant authorizes the forensic examination of the SUBJECT TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT TELEPHONES that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e.  any information recording schedule or travel;

    f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    g.  contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of the SUBJECT TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephones.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a black Apple iPhone cellular telephone with a clear case; a<br>black Samsung cellular telephone with a black case; and a<br>black Samsung cellular telephone with no case | Case No. 23-8394 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

### See attached Affidavit of Special Agent Jacquelyn K. Czopek

☒ Continued on the attached sheet.
☐ Delayed notice of __ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA D. Matthew Conti

_____
*Applicant's Signature*

Jacquelyn K. Czopek, Drug Enforcement Administration
*Printed name and title*

Sworn to telephonically and signed electronically.

Date: 9-12-23   2:53pm

_____
*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Apple iPhone cellular telephone with a clear case (SUBJECT TELEPHONE 1); a black Samsung cellular telephone with a black case (SUBJECT TELEPHONE 2); and a black Samsung cellular telephone with no case (SUBJECT TELEPHONE 3) hereafter the "SUBJECT TELEPHONES." The SUBJECT TELEPHONES are currently located at the DEA Office.

This warrant authorizes the forensic examination of the SUBJECT TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT TELEPHONES that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance including:

   a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e.  any information recording schedule or travel;

   f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g.  contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of the SUBJECT TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephones.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Jacquelyn K. Czopek, being first duly sworn, hereby deposes and states as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine a black Apple iPhone cellular telephone with a clear case (SUBJECT TELEPHONE 1); a black Samsung cellular telephone with a black case (SUBJECT TELEPHONE 2); and a black Samsung cellular telephone with no case (SUBJECT TELEPHONE 3) described more particularly in Attachment A (collectively the "SUBJECT TELEPHONES"), and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.      I am a Special Agent with the United States Drug Enforcement Administration (DEA).  I have been so employed since October 2010.  I am a law enforcement officer of the United States and is empowered by law to conduct investigations, make arrests, and execute search warrants.  I am currently assigned to the DEA Phoenix, Arizona Field Division, Strike Force. Strike Force conducts narcotics investigations into International Drug Trafficking Organizations (DTOs) and specializes in the detection, penetration, and dismantlement of these organizations, often coordinated with the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), United States Postal Inspectors, and state/local law enforcement personnel designated as Task Force Officers (TFOs).  I am also a cross-certified Federal Peace Officer with the Maricopa County Sheriff's Office, in accordance with A.R.S. § 13-3875, and may exercise all law enforcement powers of an Arizona Peace Officer.

3.      I have a Bachelor's of Science (B.S.) degree in Psychology from Augustana College in Rock Island, Illinois, and a Master's Degree in Criminal Justice from Lewis

University in Romeoville, Illinois.   I have completed the Drug Enforcement Administration's Basic Agent Training.   The curriculum for the nineteen-week course includes federal law regarding drug-related offenses and criminal investigations, drug identification, physical surveillance, undercover negotiations, and electronic surveillance.

4.     By virtue of my employment as a Special Agent, I have performed various tasks, which include; investigations into the distribution of marijuana, methamphetamine, heroin, cocaine, fentanyl, Oxycodone, Hydrocodone, Alprazolam (Xanax), as well as the manufacture of methamphetamine and anabolic steroids.   I have participated in both physical and electronic surveillance, which has led to or assisted in the seizure of United States Currency (USC), distributable amounts of marijuana, heroin, cocaine, methamphetamine, Oxycodone, Hydrocodone, Tramadol, fentanyl, Promethazine with Codeine, anabolic steroids, chemical precursors, as well as drug ledgers, drug-related paraphernalia and other documents and records used to facilitate the activities of DTOs.

5.     I have participated in many aspects of drug investigations, including the execution of multiple search warrants, Grand Jury subpoenas, and ex parte orders for evidence of drug-related offenses, including narcotics, drug-related ledgers, paraphernalia, records, and evidence of money laundering crimes through the placement and layering of large amounts of USC.

6.     In the course of conducting drug investigations, I have personally interviewed confidential informants (CIs), cooperating defendants (CDs), sources of information (SOIs) and/or persons involved in the distribution of illegal and diverted drugs and the movement of proceeds from illegal drugs. I have also been an affiant for cellular telephone tracking orders, mobile trafficking devices (MTDs), search warrants, seizure warrants, and federal complaints.

7.     The statements contained in this Affidavit are based on information derived from my personal knowledge, training and experience; information obtained from the

2

knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; and analysis of telephone records.

8.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.   **BASIS FOR PROBABLE CAUSE**

9.      On August 16, 2023, investigators were conducting surveillance of an apartment complex located at 3223 N. Algodon Way, Apt 1064, in Phoenix (the "Algodon Residence"). Based on an ongoing investigation, investigators believed the occupants of the Algodon Residence were trafficking controlled substances. At approximately 6:00 p.m., investigators observed a white Nissan Sentra bearing Mexican registration VLT-195-B ("the Nissan") arrive and park in the designated parking spot for the Algodon Residence. Shortly after arriving, two Hispanic males got out of the Nissan. The driver, later identified as Luis Fernando ALEMAN-Solis ("ALEMAN"), retrieved a large yellow bag from the trunk of the Nissan. The front seat passenger, later identified as Humberto Armando OCHOA-Ballardo ("OCHOA"), retrieved a gray suitcase from the trunk of the Nissan. Then, ALEMAN and OCHOA carried the bags to a white Chevrolet Impala's trunk which had a Mexican license plate FYW-711-D ("the Impala"). The Impala was parked behind the Nissan. Afterwards, ALEMAN and OCHOA walked to the Algodon Residence.

10.     Soon after, investigators observed OCHOA exit the breezeway of the Algodon Residence. OCHOA returned to the Impala, retrieved the gray suitcase from the trunk, and walked back to the Algodon Residence with the suitcase. Several minutes later, investigators observed OCHOA and ALEMAN exit the breezeway of the Algodon Residence and walk towards the Nissan. ALEMAN entered the driver's seat and OCHOA placed the gray suitcase in the trunk of the Nissan and then got into the front passenger's

seat. Based on the prior surveillance, this investigation, and our observations of ALEMAN and OCHOA's handling of the gray suitcase, I believed the suitcase contained controlled substances.

11.     As the Nissan began backing out of the parking spot, investigators activated their emergency lights and sirens and conducted a stop. ALEMAN and OCHOA were removed from the Nissan and detained. At approximately 6:20 p.m., OCHOA was advised of his *Miranda* Rights in Spanish. OCHOA stated he understood his rights. OCHOA was informed that investigators had observed him place the luggage into the Nissan and was asked if there was anything illegal in the Nissan. OCHOA admitted to the luggage containing "pills" and consented to a search the Nissan. OCHOA also consented to a search of the Impala. OCHOA admitted he owned the Impala and stated that it also contained pills. OCHOA admitted that he lives in unit 1064 and provided investigators with the key to the apartment. He said that he was unsure if the apartment contained anything illegal. Then he consented to a search of the Algodon Residence. While ALEMAN was detained, he stated that he was driving the Nissan, but he doesn't own it. He permitted the investigators to search the vehicle.

12.     During the search of the Nissan, I located the gray suitcase in the trunk that contained approximately 11.6 kilograms of round blue pills wrapped in black and clear cellophane wrap. A search of the Nissan resulted in the seizure of two firearms located underneath the driver's and front passenger's seats. SUBJECT TELEPHONE 1 and SUBJECT TELEPHONE 2 were located in the center console of the Nissan. During the search of the Nissan, SUBJECT TELEPHONE 1 continuously rang and displayed an incoming call from "Oscar Lopez 2." SUBJECT TELEPHONE 3 was also located in the cup holder of the Nissan.

13.     During the search of the Impala, investigators discovered approximately 8.6 kilograms of round blue pills and 3.3 kilograms of a white powder in brick shaped

4

packages within the yellow bag and a small brown bag in the trunk. A search of the Algodon Residence resulted in the discovery of an additional 1.8 kilograms of round blue pills wrapped in black and clear cellophane and U.S. currency totaling $59,050.00. ALEMAN and OCHOA were placed under arrest and transported to the DEA Office.

14.     ALEMAN and OCHOA were placed under arrest and transported to the DEA office. During a post-*Miranda* interview, OCHOA admitted that he knew that the Nissan and the Impala contained pills. OCHOA also admitted that he lives the Algodon Residence and that he and ALEMAN were going to deliver the suitcase containing the pills to a Phoenix-based buyer. OCHOA identified a black Apple iPhone with a clear case (SUBJECT TELEPHONE 1) and a black Samsung Cellular telephone with a black case (SUBJECT TELEPHONE 2) as belonging to him. OCHOA stated that he was contacted and asked to do the job of picking up and delivering the pills. When asked if the number of the person was in one of his cellphones (SUBJECT TELEPHONE 1 or SUBJECT TELEPHONE 2), OCHOA said the number could be in his phone, but he that had a lot of messages and didn't elaborate further. OCHOA said that he and ALEMAN were being directed where to go via "the phone." Based on the multiple phones were found in the Nissan, I believe OCHOA and ALEMAN were likely being contacted on different telephones to deliver and pickup controlled substances on behalf of the organization.

15.     During a post-*Miranda* interview, ALEMAN admitted that he knew that the Nissan and Impala contained pills. ALEMAN stated that he was provided a black Samsung cellphone with no case (SUBJECT TELEPHONE 3) from an unknown female soon after his arrival in Phoenix. ALEMAN stated that he began receiving text messages on SUBJECT TELEPHONE 3 from multiple numbers directing him where to pick up and deliver pills and money. During the interview, ALEMAN allowed investigators to review text messages with a contact saved as "Arturo" which discussed quantities and prices for fentanyl pills. During the communications, "Arturo" sent SUBJECT TELEPHONE 3 the

address of "6515 W. Coolidge St." ALEMAN admitted this was the address to which they were traveling to with the suitcase of pills when they he and OCHOA were arrested.

16.     The SUBJECT TELEPHONES are currently in the lawful possession of the DEA.  Therefore, while the DEA might already have all necessary authority to examine the devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

17.     The SUBJECT TELEPHONES are currently in storage at the DEA office in the District of Arizona.  In my training and experience, I know that the SUBJECT TELEPHONES have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT TELEPHONES first came into the possession of the DEA.

### III.   ITEMS TO BE SEIZED

18.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT TELEPHONES.

19.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with toll records, your Affiant knows the following:

a.     Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities.  Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT TELEPHONES.

6

b.      Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities.  Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT TELEPHONES.

c.      Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions.  Moreover, drug traffickers commonly take photographs of their firearms.  Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on the SUBJECT TELEPHONES.

20.    In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT TELEPHONES.

## IV.   DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

21.    As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT TELEPHONES.  Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

22.    *Probable cause.*  Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT TELEPHONES for at least the following reasons:

a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.  The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal

offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

      b.    Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

      c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In

addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

23.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT TELEPHONES because:

a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log: session

times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other

10

storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

24.    *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT TELEPHONES, including the use of computer-assisted scans.

25.    *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

## V.    CONCLUSION

26.    Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) are likely to be found in the contents of the SUBJECT TELEPHONES further described in Attachment A.

Jacquelyn K. Czopek
Drug Enforcement Administration

Subscribed and sworn to before me this ___12___ day of September, 2023.

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge

12